# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:22-cv-00326-MHT-SMD |
| ) ) | **AMENDED COMPLAINT** |
| CHIPOTLE MEXICAN GRILL, INC. and ) CHIPOTLE SERVICES, LLC, ) ) | |
| ) | **JURY TRIAL DEMAND** |
| Defendants. ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e et seq. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of sex (female) and to provide appropriate relief to Hannah Navarro ("Navarro"), who was adversely affected by such practices. As alleged with greater particularity in paragraphs nineteen (19) through thirty-four (34) below, Defendants Chipotle Mexican Grill, Inc. ("Chipotle Mexican Grill") and Chipotle Services, LLC ("Chipotle Services") (collectively, "Defendants") discriminated against Navarro by subjecting her to harassment because of her sex (female) at a restaurant operated by Defendants in Prattville, Alabama, and failed to take prompt, remedial action to prevent or stop the harassment.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Alabama, Northern Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Chipotle Mexican Grill, Inc., has continuously employed at least 15 employees.

5. At all relevant times, Chipotle Mexican Grill, Inc., has continuously been a foreign corporation doing business in Autauga County, Alabama.

6. At all relevant times, Chipotle Services, LLC, has continuously been a foreign corporation doing business in Autauga County, Alabama, and has continuously employed at least 15 employees.

7. At all relevant times, Chipotle Mexican Grill, Inc., has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

8. At all relevant times, Chipotle Services, LLC, has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

9. More than thirty days prior to the institution of this lawsuit, Navarro filed a Charge of Discrimination with the Commission alleging violations of Title VII by "Chipotle Mexican Grill."

10. During the Commission's investigation, Chipotle Mexican Grill identified itself as the Respondent to Navarro's Charge of Discrimination and represented that it had employed Navarro.

11. Chipotle Services was aware of Navarro's Charge of Discrimination at the time of the Commission's investigation.

12. Chipotle Services participated in the Commission's investigation of Navarro's Charge of Discrimination through activities that included providing information, materials, and witnesses that Chipotle Mexican Grill presented to the Commission.

13. On October 4, 2021, the Commission issued a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting the Respondent to join the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

14. Chipotle Services had the opportunity to join in the conciliation effort.

15. In its efforts to conciliate, the Commission engaged in communications with the Respondent to provide it with the opportunity to remedy the discriminatory practices described in the Letter of Determination. During the conciliation process, Chipotle Mexican Grill never apprised the Commission that it was not Navarro's employer. The Commission was unable to secure a conciliation agreement acceptable to the Commission.

16. On January 25, 2022, the Commission issued a Notice of Failure of Conciliation advising the Respondent that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

17. All conditions precedent to the institution of the lawsuit have been fulfilled.

18. Since the commencement of this litigation, Chipotle Mexican Grill has taken a position contrary to its earlier representations to the Commission that it was Navarro's employer and now contends that Navarro was employed by Chipotle Services.

## STATEMENT OF CLAIMS

19. Defendants, headquartered in Newport Beach, California, own and operate a casual fast food restaurant chain that specializes in Mexican cuisine with locations in most of the states in the United States.

20. Defendants own and operate a restaurant located in Prattville, Alabama that operates under the name "Chipotle Mexican Grill" (the "Prattville Restaurant").

21. On or around October 23, 2019, Defendants hired Navarro to work as a cashier at the Prattville Restaurant.

22. During Navarro's employment with Defendants and prior to that time, Defendants employed Nick Baker as the general manager of the Prattville Restaurant.

23. Nick Baker was Navarro's supervisor or manager.

24. Beginning at least as early as January 2019, Baker sexually harassed multiple female employees at the Prattville Restaurant on a daily basis by subjecting them to unwanted sexual advances, frequent sexual comments, and frequent sexually offensive conduct, including sexual contact.

25. At least one female employee was sexually harassed on a daily basis by Baker from

January 2019 until she quit on or about September 29, 2019, as a result of the harassment. After quitting, that employee complained about Baker's sexual harassment multiple times: she filed a report via Chipotle's corporate Ethics Point on October 1, 2019; she contacted Chipotle Employee Services on October 11, 2019, and emailed an account of the harassment to Chipotle Employee Services; and she complained to Chipotle's Human Resources Department about Baker's harassment. In her October 1, 2019, complaint, she complained she had been subjected to ongoing sexual harassment by Baker for one to three months. In her description, she recounted multiple instances of sexual harassment: Baker grabbing her buttocks multiple times, hugging her from behind and kissing her forehead without consent, and becoming aggressive when she rebuffed his advances.

26. Defendants failed to investigate any of the harassment complaints about Baker, never counseled or disciplined Baker, never trained him or monitored his behavior, and never took any other steps that would have stopped Baker's sexual harassment of female employees and prevented Baker's sexual harassment of Navarro.

27. From October 23, 2019, and continuing until at least late November 2019, Defendants engaged in unlawful employment practices by subjecting Navarro to discrimination on the basis of her sex, female, while she was working at the Prattville Restaurant, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

28. Specifically, Defendants subjected Navarro to unlawful sexual harassment by allowing Baker to perpetuate frequent, severe, pervasive, unwanted, humiliating, degrading, and offensive conduct towards her based on Navarro's sex.

29. Baker frequently made unwanted sexual advances and frequent sexual comments. He frequently touched Navarro in a sexual manner throughout the time Navarro was employed at

5

the Prattville Restaurant.

    30.    Baker's conduct included the following:

    a.    On Navarro's first day of employment, Baker said to her that she could sit on his lap.

    b.    During Navarro's first week of employment, Baker asked if he could be her "boo." When she declined and stated she had a boyfriend, Baker grabbed her by the arm, saying "Come on, it'll be fine." Navarro pulled away to return to the cash register.

    c.    Baker repeatedly called Navarro "babe" and asked her to be his babe.

    d.    Baker propositioned Navarro to come home with him at least five to six times over the course of a month.

    e.    Baker made sexual comments on a daily basis about Navarro's clothing and her body.

    f.    Baker intentionally poked and pinched Navarro daily throughout her shift as he walked by her.

    g.    Baker would frequently grab Navarro and squeeze her by the hips as if to move her out of the way even though there was more than enough room for him to walk by without touching her.

    h.    Baker would pinch Navarro from behind on her thighs and buttocks.

    i.    Baker rubbed his open palm along Navarro's buttocks when moving through her area at the cash register. This occurred at least twenty times during her employment with Defendant.

    j.    At least five to ten times, Baker rubbed his genitals against Navarro's buttocks as he walked by her.

  k. Almost daily, Baker would ask Navarro a question while rubbing his arm down her arms, wrapping his arms around her from behind, or putting his hand on her hips or buttocks. After each incident Navarro told him to stop or, if a customer was present, she gave him a look to convey to him to stop. She often struggled to get out of his grip.

  l. On one occasion, Baker walked by, grabbed Navarro from behind, and rubbed his erect penis against her buttocks. When she attempted to get away, Baker grabbed her by the arm. Navarro eventually was able to break free and walked away.

  m. Baker regularly asked for hugs, and Baker would hug Navarro even if she said no.

  31. In addition, Baker and other male employees often passed around pictures of female employees, including Navarro, and went to female employees' social media accounts and make comments on their bodies openly in front of the female employees, including Navarro.

  32. Navarro was embarrassed and upset by the male employees' conduct and comments and repeatedly told them to stop the passing around and commenting on pictures of her.

  33. Navarro felt violated and disrespected as a result of Baker's harassment. She worried about her safety when she was at work and was frequently on edge anticipating the daily sexual comments and touching. She became embarrassed when the harassment occurred in front of customers and co-workers. Her self-esteem was damaged, and the harassment affected her life outside of work.

  34. On or about November 29, 2019, after a confrontation with Baker, Navarro left work and never returned.

  35. The unlawful employment practices complained of in paragraphs nineteen (19) through thirty-four (34) above subjected Navarro to a hostile work environment based on sexual harassment.

36. The unlawful employment practices complained of in paragraphs nineteen (19) through thirty-four (34) above were done with malice or with reckless indifference to the federally protected rights of Navarro.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from engaging in employment practices that discriminate on the basis of sex.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendants to make whole Navarro, by providing, as appropriate, compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs nineteen (19) through thirty-four (34) above, in amounts to be determined at trial.

D. Order Defendants to pay punitive damages for its malicious and reckless conduct described in paragraphs nineteen (19) through thirty-four (34) above, in amounts to be determined at trial.

E. Grant such further relief as the Court deems necessary and proper in the public interest.

F. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Amended Complaint.

DATED: February 6, 2023.

                                RESPECTFULLY SUBMITTED,

                                GWENDOLYN REAMS
                                Acting General Counsel

                                U.S. Equal Employment Opportunity Commission
                                131 M. Street E
                                Washington, DC 20507

                                /s/Marsha Rucker
                                MARSHA RUCKER (PA Bar No. 90041)
                                Regional Attorney

                                EQUAL EMPLOYMENT OPPORTUNITY
                                COMMISSION,
                                Birmingham District Office
                                Ridge Park Place, Suite 2000
                                1130 22nd Street, South
                                Birmingham, Alabama 35205
                                Telephone: (205) 651-7045
                                Facsimile: (205) 212-2041

## CERTIFICATE OF SERVICE

      I hereby certify that on February 6, 2023, I filed the foregoing with the Clerk of Court using the CM/ECF system which will electronically send notification of the filing to all attorneys of record.

                                                          */s/Carl Chang*
                                                          Carl Chang
                                                          Trial Attorney